IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PENNWELL CORPORATION, | ) | |
| an Oklahoma Corporation, | ) | |
| Plaintiff Number 1 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-CV-537-CVE-PJC |
| | ) | |
| PRAETORIAN GROUP, INC. | ) | |
| a California Corporation | ) | The Action is not related to any |
| | ) | previously filed action. |
| Defendant Number 1 | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

## COMPLAINT

Plaintiff PennWell Corporation, ("PennWell") for its Complaint against Defendant Praetorian Group, Inc. ("Praetorian"), alleges and states as follows:

## INTRODUCTION

1.      PennWell's action is based on Praetorian's numerous and ongoing breaches of its contract with Fire Apparatus Magazine, L.L.C., (the "Agreement"). PennWell has standing to assert claims under the Agreement as it succeeded to Fire Apparatus Magazine, L.L.C.'s rights under the Agreement through an Asset Purchase Agreement between PennWell and Fire Apparatus Magazine, L.L.C., dated August 19, 2010.  Praetorian's breaches of the Agreement are the basis for PennWell's causes of action for (i) breach of contract, (ii) conversion, (iii) unfair competition, and (iv) unjust enrichment.    PennWell also asserts causes of action for trademark infringement, trademark dilution, and cybersquatting to protect the trademarks and trade names it acquired from Fire Apparatus Magazine, L.L.C.    Finally, PennWell demands an accounting of Praetorian's various obligations to PennWell pursuant to the Agreement.

**THE PARTIES**

2.      PennWell is an Oklahoma corporation with its principal place of business at 1421 South Sheridan, Tulsa, Oklahoma 74112.

3.      Upon information and belief, Defendant Praetorian is a California Corporation with its principal place of business in San Francisco, California.

**JURISDICTION AND VENUE**

4.      Jurisdiction is founded under 28 U.S.C. §§ 1331 and 1338(a) as this action is brought under 15 U.S.C. §§ 1114, 1115, and 1125.

5.      Jurisdiction is also founded under 28 U.S.C. § 1332 as complete diversity of Citizenship exists between PennWell and Praetorian. The amount in controversy in this action exceeds $75,000.00, exclusively of interest and costs.

6.      Praetorian's contacts with Oklahoma are continuous and systemic because, upon information and belief, Praetorian regularly conducts business in Oklahoma.

7.      Praetorian's contacts with Oklahoma are continuous and systemic because, upon information and belief, Praetorian regularly publishes information on its websites directed toward the residents of Oklahoma and Praetorian regularly solicits business from Oklahoma residents.

8.      Praetorian is further subject to the jurisdiction of the Courts of Oklahoma as Praetorian's management has previously conducted business negotiations with PennWell in Oklahoma.

9.      Venue is proper in the District because upon information and belief, a substantial part of the events or omissions giving rise to the claims herein and the

2

threatened and actual harm to PennWell occurred in this District by reason of Defendant's conduct as alleged below.

## MATERIAL FACTS

10.     PennWell is headquartered in Tulsa, Oklahoma and was incorporated as an Oklahoma corporation in 1910.  PennWell is a business to business media company providing print and online publications, conferences and exhibitions, research, data bases, and information products to specific strategic markets including comprehensive coverage of the firefighting industry.

11.     On or about January 1, 2009, Praetorian and Fire Apparatus Magazine, L.L.C. entered into the Agreement wherein Praetorian was to redesign the fireapparatusmagazine.com website and thereafter, host and manage such website.  The Agreement also provided for the parties to co-promote and market the website and share revenues derived from the website.  A true and complete copy of the Agreement is attached and incorporated herein as Exhibit A.

12.     Upon information and belief, on or about 1996, Fire Apparatus Magazine, L.L.C. began publishing Fire Apparatus and Emergency Equipment Magazine (the "Magazine") which is a directed toward firefighters, fire chiefs, commissioners and others whose responsibility is to purchase firefighting vehicles and equipment.  The Magazine focuses on trucks, tools, and new technologies in the fire service field.

13.     Fire Apparatus Magazine, L.L.C. expended substantial amounts of time and money to establish and promote the Magazine which has become one of the dominant and preeminent magazines in the firefighting industry.

14.     Fire Apparatus Magazine, L.L.C. has for numerous years conducted substantial and continuous business under the trade names "Fire Apparatus," "Fire Apparatus and Emergency Equipment Magazine" and "Fire Apparatus Magazine."  Fire Apparatus Magazine, L.L.C. has valid and enforceable rights in and to the trade names "Fire Apparatus," "Fire Apparatus and Emergency Equipment Magazine" and "Fire Apparatus Magazine." (collectively the "Trade Names" which are now owned by PennWell).

15.     Fire Apparatus Magazine, L.L.C. has for numerous years conducted substantial and continuous business under the trademarks "FIRE APPARATUS," "FIRE APPARATUS AND EMERGENCY EQUIPMENT MAGAZINE" and "FIRE APPARATUS MAGAZINE."   Fire Apparatus Magazine, L.L.C. has valid and enforceable rights in and to the trademarks "FIRE APPARATUS," "FIRE APPARATUS AND EMERGENCY EQUIPMENT MAGAZINE" and "FIRE APPARATUS MAGAZINE." (collectively the "Trademarks" which are now owned by PennWell).

16.     The Trademarks and Trade Names are widely known and recognized among members of the firefighting industry.

17.     The trademarks "FIRE APPARATUS," "FIRE APPARATUS AND EMERGENCY EQUIPMENT MAGAZINE" and "FIRE APPARATUS MAGAZINE" have developed secondary meaning and have become distinctive trademarks and readily-identifiable trade names, denoting within the firefighting industry a high degree of reliability and quality.  Due to such reputation and industry awareness, Fire Apparatus Magazine, L.L.C. acquired considerable goodwill and value in connection with the Trademarks and Trade Names.

4

18.     In May 2002, Praetorian registered or became the owner of the domain name fire fireapparatus.com.

19.     Praetorian is a direct competitor of Fire Apparatus Magazine, L.L.C.

20.     Praetorian is a direct competitor of PennWell in the firefighting industry.

21.     Fire Apparatus Magazine, LLC registered the domain names fireapparatusmagazine.com, fireapparatusmagazine.org, fireapparatusmagazine.net, fireapparaatusone.com, fireapparatus1.com, fireapparatus.info, fireapparatus.net, fireapparatusnews.com, firemagazine1.com, and firemagazine.com (collectively the "Domain Names" which are now owned by PennWell).

22.     On August 19, 2010, PennWell and Fire Apparatus Magazine, L.L.C. entered into an Asset Purchase Agreement where PennWell acquired all of Fire Apparatus Magazine, L.L.C.'s rights to (i) the Magazine, (ii) Trade Names, (iii) the Trademarks, (iv) the Domain Names, and (v) the Agreement as well as the goodwill of these assets.

23.     PennWell intends to spend significant amounts of money to promote and advertise the Magazine.

24.     PennWell intends to use the Trade Names and Trademarks to promote the Magazine and where applicable other PennWell publications and events.

25.     The Magazine, Trademarks, Trade Names, and Domain Names, along with their goodwill, are now valuable assets of PennWell.

26.     The domain name of Praetorian's website fireapparatus.com is virtually identical and confusingly similar to the Trademarks and Trade Names PennWell acquired from Fire Apparatus Magazine, L.L.C.

5

27.    On information and belief, Praetorian registered and maintained the fireapparatus.com website in order to unfairly compete with Fire Apparatus Magazine, L.L.C. by, and not limited to, confusing its customers and diverting customers, sales, and profits away from Fire Apparatus Magazine, L.L.C. to Praetorian.

28.    Praetorian's operation and use of the fireapparatus.com website constitutes unfair competition with PennWell by, and not limited to, confusing its customers and diverting customers, sales, and profits away from PennWell to Praetorian.

29.    Praetorian's previous operation and use of the fireapparatus.com website used and displayed, without authorization or approval from Fire Apparatus Magazine, L.L.C. the Trademarks and Trade Names.

30.    Praetorian's current operation and use of the fireapparatus.com website uses and displays, without authorization or approval from PennWell, the Trademarks and Trade Names.

31.    Upon information and belief, Praetorian's website fireapparatus.com sells, or features advertisements for the sale of, goods and services directly competitive with those sold or provided by the Magazine, Trademarks, Trade Names, or other PennWell products.

32.    Upon information and belief, Praetorian used and continues to use fireapparatus.com to divert, for its commercial gain, and to PennWell's detriment, Internet users searching for the Magazine, Trademarks, or Trade Names.

33.    Upon information and belief, when Internet users click on one or more of the displayed HTML links on fireapparatus.com, Praetorian received payment from one or more advertiser, search engine, or affiliate program.

6

34.     Praetorian's continued use of the fireapparatus.com domain name is likely to cause confusion, mistake, or deception as to the source or origin of the domain name and is likely to falsely suggest a sponsorship, connection, license, or association of Praetorian with PennWell.

35.     Praetorian's acts have deliberately harmed and will continue to harm the goodwill associated with the Magazine, Trademarks, and Trade Names.

36.     Praetorian's acts have diluted and will continue to dilute the Trademarks and Trade Names.

37.     Praetorian's actions have irreparably harmed PennWell and if not enjoined will continue to irreparably harm PennWell and its long-used and established Trademarks and Trade Names.

38.     Praetorian's actions have irreparably harmed the general public, and if not enjoined will continue to irreparably harm the general public who has an inherent interest in being free from confusion, mistake and deception.

39.     Praetorian, without the consent or approval of Fire Apparatus Magazine, L.L.C. copied content consisting of classified advertisements and videos from Fire Apparatus Magazine, L.L.C.'s website, (the "Misappropriated Content") and placed such content on its website(s).

40.     Praetorian's copying and posting of the Misappropriated Content was not authorized by the Agreement.

41.     Upon information and belief, Praetorian copied the Misappropriated Content from Fire Apparatus Magazine, L.L.C.'s website and placed it on its website in order to divert customers, sales, and profits away from Fire Apparatus Magazine, L.L.C.

7

and to Praetorian and to increase user traffic to Praetorian's websites to the detriment of Fire Apparatus Magazine, L.L.C.

42.    PennWell has acquired all of Fire Apparatus Magazine, L.L.C.'s rights to the Misappropriated Content through the aforementioned Asset Purchase Agreement and PennWell does not consent to Praetorian's possession, retention or use of the Misappropriated Content, now owned by PennWell.

43.    Praetorian's possession, retention or use of the Misappropriated Content constitutes a material breach of the Agreement as Section I(B) of the Agreement states-- all content of fireapparatusmagazine.com shall be the property of Fire Apparatus Magazine, L.L.C. (which is now the property of PennWell).

44.    Praetorian's continued possession and use of the Misappropriated Content will cause irreparable harm to PennWell.

45.    Praetorian's continued possession and use of the Misappropriated Content will cause damages to PennWell.

46.    Section I(C) of the Agreement required Praetorian to compile a list of e-mail addresses for users of fireapparatusmagazine.com and provide on a quarterly basis, a copy of the updated e-mail list to Fire Apparatus Magazine, L.L.C. (the "E-Mail List") The E-Mail List is owned independently and equally by Fire Apparatus Magazine, L.L.C. and Praetorian.

47.    PennWell acquired Fire Apparatus Magazine, L.L.C.'s ownership rights to the E-Mail List through the aforementioned Asset Purchase Agreement.

48.     Upon information and belief, based on small number of e-mail addresses added to the E-Mail List during the term of the Agreement, Praetorian failed to disclose all e-mail addresses to Fire Apparatus Magazine, L.L.C. in violation of the Agreement.

49.     The E-Mail list is an extremely valuable asset to PennWell and is an important tool for PennWell to promote and advertise the Magazine and its other firefighting publications and events.

50.     By depriving PennWell of the full and complete E-Mail List, which is equally owned by PennWell, Praetorian is competing unfairly with PennWell.

51.     Praetorian's failure to disclose the complete E-Mail List constitutes a material breach of the Agreement.

52.     Section IV(D) of the Agreement required Praetorian to manage a "Cost Per Click" advertising program.  Upon information and belief, Praetorian entered into a contract with Google where fireapparatusmagazine.com would host Google ads and Praetorian would be paid a fee based upon the amount of web traffic.  Praetorian was then obliged to remit the entire payment to Fire Apparatus Magazine, L.L.C. pursuant to Section IV(D)(c) of the Agreement.

53.     The Agreement estimated that Fire Apparatus Magazine, L.L.C. would receive $750 per month from this advertising program.  However, Fire Apparatus Magazine, L.L.C. never received $750 per month and in fact received significantly less during the term of the Agreement.

54.     Upon information and belief, based on the amount of money remitted to Fire Apparatus Magazine, L.L.C, Praetorian failed to remit all compensation and fees it

received from Google or any other advertiser to Fire Apparatus Magazine, L.L.C. in violation of the Agreement.

55.     PennWell acquired Fire Apparatus Magazine, L.L.C.'s rights to receive payments for the "Cost per Click" program through the aforementioned Asset Purchase Agreement.

56.     Upon information and belief, Praetorian's failure to remit proper payment to Fire Apparatus Magazine, L.L.C, and now PennWell constitutes a material breach of the Agreement.

57.     Sections IV(A), (B), and (C) of the Agreement set forth the parties' obligations to work together to increase digital revenue for fireapparatusmagazine.com. Upon information and belief, Praetorian has not remitted proper payment to Fire Apparatus Magazine, L.L.C. or charged too high a commission for its services.

58.     PennWell acquired Fire Apparatus Magazine, L.L.C.'s rights under Section (IV) of the Agreement through the aforementioned Asset Purchase Agreement.

59.     Upon information and belief, Praetorian's failure to remit proper payment to Fire Apparatus Magazine, L.L.C, and now PennWell, and/or failure to charge proper commissions, constitutes a material breach of the Agreement.

60.     Praetorian violated Sections (II)(A) and (D) of the Agreement by charging Fire Apparatus Magazine, L.L.C. $1,500 for site hosting and maintenance services it was obligated to provide at no charge.

## COUNT I
### (Trademark Infringement)

61.     PennWell incorporates by reference Paragraphs one (1) through sixty (60) above, as if fully set forth here.

62.      The domain name of Praetorian's website fireapparatus.com is virtually identical and confusingly similar to the Trademarks and Trade Names.

63.      Praetorian's use in commerce of the website fireapparatus.com. is likely to cause confusion, mistake, and to deceive the general public and/or the firefighting industry.

64.     The above described acts by Praetorian constitute trademark infringement in violation of 15 U.S.C. §  1114 entitling PennWell to relief.

65.     Praetorian has unfairly profited from its trademark infringement.

66.     Praetorian's actions are intentional, willful, and performed in bad faith with a malicious intent to trade on the goodwill associated with Fire Apparatus Magazine, L.L.C.'s Trademarks and Trade Names, now owned by PennWell.

67.     By reason of Praetorian's acts, PennWell has suffered damage to the goodwill associated with the Trademarks and Trade Names.

68.     Praetorian's actions have irreparably harmed PennWell and if not enjoined will continue to irreparably harm PennWell and its long-used and established Trademarks and Trade Names.

69.     Praetorian's actions have irreparably harmed the general public, and if not enjoined will continue to irreparably harm the general public who has an inherent interest in being free from confusion, mistake and deception.

11

70.     By reason of Praetorian's acts, PennWell has no adequate remedy at law to compensate it for the injuries and damages inflicted by Praetorian.   Accordingly, PennWell is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. §  1116.

71.     By reason of Praetorian's willful acts, PennWell is entitled to damages and those damages be trebled relief pursuant to 15 U.S.C. §  1117.

72.     This is an exceptional case making PennWell eligible for an award of attorney's fees pursuant to 15 U.S.C. §  1117.

## COUNT II
### (False Designation of Origin)

73.     PennWell incorporates by reference Paragraphs one (1) through seventy-two (72) above, as if fully set forth here.

74.     Praetorian's use in commerce of the website fireapparatus.com. is likely to cause confusion, mistake, or to deceive the relevant public that fireapparatus.com. and the websites and advertisements displayed at fireapparatus.com. are authorized, sponsored, approved by, or affiliated with, the Magazine or PennWell.

75.     Praetorian's use in commerce of the website fireapparatus.com. is likely to cause initial interest confusion among the general public or the firefighting industry.

76.      The above described acts by Praetorian constitute trademark infringement and false designation of origin in violation of 15 U.S.C. §  1125(a) entitling PennWell to relief.

77.     Praetorian has unfairly profited from the actions alleged.

78.     By reason of Praetorian's acts, PennWell has suffered damage to the goodwill associated with the Trademarks and Trade Names.

79.     Praetorian's actions are intentional, willful, and performed in bad faith with a malicious intent to trade on the goodwill associated with PennWell's Trademarks and Trade Names.

80.     Praetorian's actions have irreparably harmed PennWell and if not enjoined will continue to irreparably harm PennWell and its long-used and established Trademarks and Trade Names.

81.     Praetorian's actions have irreparably harmed the general public, and if not enjoined will continue to irreparably harm the general public who has an inherent interest in being free from confusion, mistake and deception.

82.     By reason of Praetorian's acts, PennWell has no adequate remedy at law to compensate it for the injuries and damages caused by Praetorian.   Accordingly, PennWell is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

83.     By reason of Praetorian's willful acts, PennWell is entitled to damages and those damages be trebled relief pursuant to 15 U.S.C. § 1117.

84.     This is an exceptional case making PennWell eligible for an award of attorney's fees pursuant to 15 U.S.C. § 1117.

## COUNT III
### (Dilution of Trademarks)

85.     PennWell incorporates by reference Paragraphs one (1) through eighty-four (84) above, as if fully set forth here.

13

86.     The Trademarks are famous as that term is used in 15 U.S.C. § 1125(c).

87.     Praetorian's use in commerce of the website fireapparatus.com. is likely to cause dilution by blurring or dilution by tarnishment of the Trademarks.

88.     The above described acts by Praetorian constitute trademark infringement and false designation of origin in violation of 15 U.S.C. § 1125(c) entitling PennWell to relief.

89.     Praetorian has unfairly profited from the actions alleged.

90.     Praetorian's actions are intentional willful, and performed in bad faith with a malicious intent.

91.     By reason of Praetorian's acts, PennWell has suffered damage to the goodwill associated with the Trademarks and Trade Names.

92.     Praetorian's actions have irreparably harmed PennWell and if not enjoined will continue to irreparably harm PennWell and its long-used and established Trademarks and Trade Names.

93.     By reason of Praetorian's acts, PennWell has no adequate remedy at law to compensate it for the injuries and damages inflicted by Praetorian.   Accordingly, PennWell is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

94.     By reason of Praetorian's willful acts, PennWell is entitled to damages and those damages be trebled relief pursuant to 15 U.S.C. § 1117.

95.     This is an exceptional case making PennWell eligible for an award of attorney's fees pursuant to 15 U.S.C. § 1117.

14

## COUNT IV
### (Cybersquatting)

96.     PennWell incorporates by reference Paragraphs one (1) through ninety-five (95) above, as if fully set forth here.

97.     The Trademarks and Trade Names are and were distinctive and well known when Praetorian registered the domain name fireapparatus.com. and at all other relevant times herein in accordance with 15 U.S.C. §  1125(d).

98.     The domain name fireapparatus.com. is confusingly similar to the Trademarks, Trade Names, and Domain Names.

99.     Upon information and belief, Praetorian registered the domain name fireapparatus.com. with the knowledge that it was confusingly similar to the Trademarks and Trade Names.

100.    Upon information and belief, Praetorian registered the domain name fireapparatus.com. without the prior knowledge, permission or consent of Fire Apparatus Magazine, L.L.C.

101.    Upon information and belief, Praetorian registration of fireapparatus.com. was made with malicious and bad faith intent to profit from, and misappropriate, the goodwill enjoyed by the Trademarks, Trade Names, and Magazine.

102.    Upon    information    and    belief,    Praetorian's    registration    of fireapparatus.com. was made with a malicious and bad faith intent to divert advertisers, customers, traffic, and prospects from Fire Apparatus Magazine, L.L.C. website to Praetorian's website, for its commercial gain and to Fire Apparatus Magazine, L.L.C.'s detriment.

103.    Upon information and belief, Praetorian registration of fireapparatus.com. was made with a malicious and bad faith intent and will divert advertisers, customers, traffic, and prospects from the Domain Names acquired by PennWell to Praetorian's website, for its commercial gain and to PennWell's detriment.

104.    Upon information and belief, because fireapparatus.com. is confusingly similar to the Trademarks, Trade Names, and Domain Names, Praetorian has created actual confusion, deception, and mistake by creating the false and misleading impression that fireapparatus.com. is authorized, associated, sponsored or approved by PennWell.

105.    Praetorian's acts have caused, and unless enjoined, will continue to cause a likelihood of confusion and deception to members of the firefighting industry and public and additionally injure PennWell's goodwill and reputation, for which PennWell has no adequate remedy at law.

106.     Praetorian's actions are intentional willful, and performed in bad faith with a malicious intent to trade on the goodwill associated with the Trademarks and Trade Names.

107.    Praetorian's conduct has caused, and is likely to continue causing, substantial injury to the public and PennWell to which PennWell has no adequate remedy at law.

108.    PennWell is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and to recover Praetorian's profits, its damages to be proven at trial, costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1117 and 1125(a); or in the alternative PennWell is entitled to statutory damages of $100,000 pursuant to 15 U.S.C. §§ 1117 and 1125(d).

16

109.    PennWell is entitled to a Court Order transferring the fireapparatus.com. domain name to PennWell.

## COUNT V
### (Breach of Contract)

110.    PennWell incorporates by reference Paragraphs one (1) through one hundred nine (109) above, as if fully set forth here.

111.    Upon information and belief, Praetorian breached the Agreement by (i) improperly reproducing Fire Apparatus Magazine, L.L.C.'s content and displaying the reproduced content on its website(s), (ii) failing to remit proper payments to Fire Apparatus Magazine, L.L.C., and (iii) improperly charging Fire Apparatus Magazine, L.L.C. to maintain and host its website, (iv) failing to provide the complete E-Mail List to Fire Apparatus Magazine, L.L.C. and (v) charging Fire Apparatus Magazine, L.L.C. for services it was obligated to provide free of charge.

112.    Praetorian's breaches of the Agreement are material and remain uncured.

113.    PennWell has acquired Fire Apparatus Magazine, L.L.C.'s rights to the Agreement and Praetorian is in breach of its obligations to PennWell.

114.    Praetorian's breaches have caused damages to PennWell in an amount exceeding $75,000.

115.    Based on Praetorian's material breaches as set forth above, PennWell can and hereby elects to immediately terminate the Agreement.

## COUNT VI
### (Conversion)

116.    PennWell incorporates by reference Paragraphs one (1) through one hundred fifteen (115) above, as if fully set forth here.

117.    Upon information and belief, Praetorian has reproduced the Misappropriated Content which is the property of PennWell and displays the Misappropriated Content on its website(s).

118.    PennWell did not consent to the appropriation of the Misappropriated Content.  Praetorian has no right to possess, control, or use the Misappropriated Content.

119.    Praetorian is wrongfully using the Misappropriated Content for its commercial gain and/or to unfairly and wrongfully compete with PennWell.

120.    The Misappropriated Content has substantial economic value to PennWell and provides PennWell with a competitive advantage in the marketplace.

121.    Praetorian's acts have damaged PennWell.  These damages may not be measurable by any certain pecuniary standard.  Accordingly, PennWell may have no adequate remedy at law.

## COUNT VII
### (Unfair Competition)

122.    PennWell incorporates by reference Paragraphs one (1) through one hundred twenty-one (121) above, as if fully set forth here.

123.    Praetorian's use or intention to use the Misappropriated Content is wrongful and constitutes unfair competition pursuant to 78 O.S § 53.

124.    Praetorian's infringing uses of the Trademarks and Trade Names and cybersquatting and the resulting harm to PennWell as set forth above is wrongful and constitutes unfair competition pursuant to 78 O.S § 53.

125.    Praetorian's failure to provide PennWell with the entire E-Mail List is wrongful and constitutes unfair competition pursuant to 78 O.S § 53.

18

126.    Praetorian intentionally engaged in these acts with the intent to harm Fire Apparatus Magazine, L.L.C. and now PennWell.

127.    PennWell will sustain damages by Praetorian's unfair competition. PennWell's damages may not be measurable by any certain pecuniary standard. Accordingly, no adequate remedy at law exists to compensate PennWell.

## COUNT VIII
### (Unjust Enrichment)

128.    PennWell incorporates by reference Paragraphs one (1) through one hundred twenty-seven (127) above, as if fully set forth here.

129.    Praetorian's retention and use of the Misappropriated Content unjustly enriched Praetorian.

130.    Upon information and belief, Praetorian's failure to provide the entire E-Mail List to Fire Apparatus Magazine, L.L.C. and now PennWell unjustly enriched Praetorian.

131.    Upon information and belief, Praetorian's failure to remit all advertising revenue to Fire Apparatus Magazine, L.L.C. and to charge it proper commissions has unjustly enriched Praetorian.

## COUNT IX
### (Accounting)

132.    PennWell incorporates by reference Paragraphs one (1) through one hundred thirty-one (131) above, as if fully set forth here.

133.    As a result of its status as a party to the Agreement and the preceding allegations of impropriety by Praetorian, PennWell is entitled to a full and complete accounting from Praetorian regarding:

A.      Misappropriated Content;

B.      E-Mail List;

C.      "Cost Per Click" advertising under Section IV(D) of the Agreement; and

D.      Advertising revenue under Sections IV(A), (B), and (C) of the Agreement.

WHEREFORE, PennWell respectfully asks that this Court enter judgment in its favor and against Praetorian on Counts (I) through (IX) of the Complaint and award PennWell damages and relief as follows:

1.      That the Court enter judgment finding that Praetorian has:

a.      Violated PennWell's rights in the Trademarks and Trade Names in violation of 15 U.S.C. §  1125(d);

b.      Violated PennWell's rights in the Trademarks and Trade Names in violation of 15 U.S.C. §  1114(1);

c.      Violated PennWell's rights in the Trademarks and Trade Names in violation of 15 U.S.C. §  1125(a);

d.      Violated PennWell's rights in the Trademarks and Trade Names in violation of 15 U.S.C. §  1125(c); and

e.      Violated PennWell's rights in the Trademarks and Trade Names in violation of 78 O.S. §  53 and the common law.

2.      That Praetorian be ordered to transfer to PennWell every domain name it, or its officers or affiliates, owns which is identical or confusingly similar to the Trademarks or Trade Names;

3.      That Praetorian, its agents, representatives, affiliates, employees, officers and all other persons or entities acting in concert or privity with Praetorian be preliminarily and permanently enjoined from the following activities:

a.      Registering or using in any manner, any domain name that incorporates, in whole or in part, the Trademarks or Trade Names or any name or mark confusingly similar thereto;

b.       Using any of the Trademarks, Trade Names, or any other name service mark, mark, logo of any kind that is likely to cause confusion regarding whether Praetorian is affiliated, associated, approved or sponsored by PennWell;

c.      Using the Trademarks, Trade Names, or any colorable imitation in connection with Praetorian's products, goods or services;

d.      Practicing trademark infringement, trademark dilution, unfair competition, false designation of origin, palming off, false advertising against PennWell or misappropriating of PennWell's trademark rights;

e.      Assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs 3(a) through 3(d) above;

4.      That Praetorian be ordered to provide at its own cost corrective advertising to the extent necessary to correct any consumer confusion or misperceptions resulting from Praetorian's unlawful and wrongful acts complained of above;

5.      That Praetorian be ordered to account to PennWell for, and disgorge, all profits it has derived by reason of the unlawful and wrongful acts complained of above;

6.      That Praetorian be ordered to pay damages, and that those damages be

trebled under 15 U.S.C. § 1117;

7.      That Praetorian be ordered to pay statutory damages under 15 U.S.C. § 1117(d), on election of PennWell, in an amount of $100,000 per domain name infringement;

8.      That Praetorian be ordered to pay PennWell's reasonable attorney's fees, prejudgment interest, costs and expenses of this action under 15 U.S.C. § 1117 and 78 O.S. § 54.

9.      Based on Praetorian's willful and deliberate infringement and dilution of the Trademarks and Trade Names, PennWell be awarded punitive damages;

10.     That the Court enter judgment finding that Praetorian has breached the Agreement and award PennWell all applicable damages:

11.     That the Court enter judgment finding that Praetorian converted PennWell's property and award PennWell the following;

        (a)     Praetorian be preliminarily and permanently enjoined from using for any reason the converted property, including but not limited to the Misappropriated Content;

        (b)     granting equitable relief, compelling Praetorian to return to PennWell all of its property misappropriated by Praetorian including but not limited to the Misappropriated Content;

        (c)     granting equitable relief compelling an accounting of such misappropriated property, including but not limited to the Misappropriated Content;

        (d)     awarding punitive damages based upon Praetorian's bad faith, intentional, malicious, and inequitable conduct;

22

(e)     awarding damages for PennWell's losses and Praetorian's unjust enrichment, including equitable disgorgement of all Defendant's ill-gotten gains;

(f)     awarding reasonable attorney's fees to PennWell;

12.     That the Court enter judgment finding that Praetorian engaged in unfair competition and award PennWell the following;

(a)     imposing an injunction, both preliminary and permanent, against any further unfair competition and misuse of PennWell's property;

(b)     granting equitable relief, including a mandatory injunction compelling the return to PennWell of its property and other information or property misappropriated by Praetorian or in its possession, custody and control;

(c)     granting equitable relief compelling an accounting of such PennWell property;

(d)     awarding damages for PennWell's losses and Praetorian's unjust enrichment, including equitable disgorgement of all Defendant's ill-gotten gains;

(e)     awarding PennWell its reasonable attorneys' fees;

(f)     awarding punitive damages based upon Defendant's bad faith, intentional, malicious, and inequitable conduct;

(g)     any other relief to which PennWell may be entitled under Oklahoma law;

13.     That the Court enter judgment ordering Praetorian to provide a full and complete accounting of the following:

(a)     Misappropriated Content;

(b)     E-Mail List;

23

    (c) "Cost Per Click" advertising under Section IV(D) of the Agreement; and

    (d) Advertising revenue under Sections IV(A), (B), and (C) of the Agreement.

   14. That the Court enter judgment ordering that the Agreement between Praetorian and Fire Apparatus Magazine, L.L.C. (now owned and assumed by PennWell) is immediately terminated based on Praetorian's material breaches as set forth above; and

   15. That the Court enter judgment awarding PennWell any other relief to which it may be entitled.


       Respectfully submitted,

       STUART, BIOLCHINI & TURNER


    By:  /s/ David P. Limekiller_____
      David P. Limekiller, OBA #18173
      15 East Fifth Street, Suite 4000
      First Place Tower
      Tulsa, Oklahoma  74103
      (918) 582-3311 telephone
      (918) 582-3033 facsimile
      ATTORNEYS FOR PLAINTIFF